UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CRESCENT PETROLEUM COMPANY INTERNATIONAL LIMITED and CRESCENT GAS CORPORATION LIMITED, | Case No. _____ |
| Petitioners, | |
| v. | |
| NATIONAL IRANIAN OIL COMPANY, Hafez Crossing Taleghani Avenue P.O. Box 1863 Tehran, Iran | |
| Respondent. | |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION
TO CONFIRM ARBITRATION AWARD**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 3

    A.    NIOC's Breach of the GSPC ............................................................ 3

    B.    The Arbitration Proceedings ........................................................... 4

        1.    The Jurisdiction and Liability Phase ..................................... 5

        2.    The Remedies Phase and the Award ..................................... 6

ARGUMENT ........................................................................................................................ 10

I.    The New York Convention and US Law Require Confirmation of the Award ........... 10

    A.    Crescent and NIOC Entered into a Valid Arbitration Agreement. ................. 12

    B.    NIOC Had Proper Notice of the Arbitration and Presented Its Case. .............. 13

    C.    The Arbitration Covered a Dispute Squarely within the Scope of the Arbitration Agreement. ..................................................................... 14

    D.    The Composition of the Tribunal and the Procedures Used in the Arbitration Were Consistent with the Parties' Arbitration Agreement. .......... 14

    E.    The Award is Binding and Has Not Been Set Aside at the Seat of Arbitration. .................................................................................... 15

    F.    US Law Permits—Indeed, Strongly Favors—Arbitration for the Resolution of International Commercial Disputes. .......................................... 17

    G.    Confirmation of the Award is consistent with the public policy of the United States. ................................................................................ 17

    H.    NIOC Has No Sovereign Immunity Defense. .................................................. 18

CONCLUSION .................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   668 F.3d 724 (D.C. Cir. 2012) ............................................................... 11, 15, 17, 19

*Chevron Corp. v. Republic of Ecuador*,
   949 F. Supp. 2d 57 (D.D.C. 2013) ......................................................................... 18

*Creighton Ltd. v. Gov't of State of Qatar*,
   181 F.3d 118 (D.C. Cir. 1999) ............................................................................... 19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   244 F. Supp. 3d 100 (D.D.C. 2017) ....................................................................... 12

*Est. of Fishbeck v. Islamic Republic of Iran*,
   No. 18-CV-2248 (CRC), 2021 WL 6808189 (D.D.C. Mar. 1, 2021) ................... 19

*Gold Reserve, Inc. v. Bolivarian Republic of Venezuela*,
   146 F. Supp. 3d 112 (D.D.C. 2015) ................................................................. 11, 16

*Holladay v. Islamic Republic of Iran*,
   523 F. Supp. 3d 100 (D.D.C. 2021) ....................................................................... 19

*Ipitrade Int'l, S.A. v. Federal Republic of Nigeria*,
   465 F. Supp. 824 (D.D.C. 1978) ............................................................................ 20

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
   2022 WL 1063954, at *6 (S.D.N.Y. Apr. 8, 2022) ............................................... 16

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   364 F.3d 274 (5th Cir. 2004) ................................................................................. 12

*M.B.L. Int'l Contractors, Inc. v. Republic of Trinidad and Tobago*,
   725 F. Supp. 52 (D.D.C. 1989) .............................................................................. 20

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*,
   665 F.3d 1091 (9th Cir. 2011) ............................................................................... 18

*Ministry of Def. of the Islamic Republic of Iran v. Gould Inc.*,
   887 F.2d 1357 (9th Cir. 1989) ............................................................................... 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ............................................................................................... 17

*Newco Ltd. v. Government of Belize*,
   650 Fed. Appx.14 (D.C. Cir. 2016) ....................................................................... 18

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier*,
   508 F.2d 969 (2d Cir. 1974) .................................................................................. 12

*Salini Costruttori S.p.A. v. Kingdom of Morocco*,
   233 F. Supp. 3d 190 (D.D.C. 2017) ....................................................................... 15

*Sterling Merchant Fin. Ltd. v. Republic of Cabo Verde*,
   261 F. Supp. 3d 48 (D.D.C. 2017) ......................................................................... 11

*Tatneft v. Ukraine*,
  771 F. App'x 9 (D.C. Cir. 2019)...........................................................................................19

## Statutes

28 U.S.C. § 1330.......................................................................................................................18

28 U.S.C. § 1605(a)(1)................................................................................................................2

28 U.S.C. § 1605(a)(6)..........................................................................................................2, 19

9 U.S.C. § 201..........................................................................................................................10

9 U.S.C. § 202....................................................................................................................10, 19

9 U.S.C. § 207..........................................................................................................................11

## Other Authorities

New York Convention art. V ................................................................................. 11-14, 15, 17

Petitioners Crescent Petroleum Company International Limited ("**Crescent Petroleum**") and Crescent Gas Corporation Limited ("**Crescent Gas**," and, together with Crescent Petroleum, "**Crescent**" or the "**Petitioners**") respectfully submit this memorandum of law in support of their petition for an order and judgment confirming, recognizing, and enforcing an arbitration award against Respondent National Iranian Oil Company ("**NIOC**" or "**Respondent**"), filed contemporaneously herewith (the "**Petition**").

## PRELIMINARY STATEMENT

This is an action to confirm a final and binding arbitration award (the "**Award**").  A duly constituted tribunal (the "**Tribunal**") issued the Award in London, United Kingdom on September 27, 2021 after a more than decade-long arbitration proceeding (the "**Arbitration**").

The Award results from NIOC's total failure to supply natural gas pursuant to the terms of a Gas Sales and Purchase Contract ("**GSPC**"), dated April 25, 2001.  The GSPC provided that NIOC would deliver natural gas to Crescent Petroleum for a 25-year term, starting December 1, 2005 ("**Gas**").  NIOC breached the GPSC by failing to deliver even a single molecule of Gas on December 1, 2005 or any time thereafter.

After NIOC failed to uphold its end of the bargain, Crescent commenced the Arbitration in accordance with the terms of the GSPC.  The Arbitration was bifurcated into a liability stage and a remedies stage.  In 2014, a majority of the Tribunal held, among other things, that the GSPC was binding and enforceable and that NIOC was liable to Crescent for its breach of the GSPC, and rejected NIOC's defenses and counterclaims.  Seven years later—a delay largely due to multiple resignations of the various arbitrators appointed by NIOC—the Tribunal issued the Award, which ordered NIOC to pay Crescent $2,429,970,000, plus post-award interest of 12 month EIBOR + 1 percentage point, by

December 27, 2021.  As of the date of this Petition, NIOC has not paid any part of the Award or post-award interest to Crescent.

Crescent is entitled to collect what they are owed.  Accordingly, Crescent respectfully requests that this Court confirm the Award and incorporate its terms into a US judgment against NIOC.  Under the Federal Arbitration Act ("**FAA**"), courts are required to confirm awards falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "**New York Convention**" or the "**Convention**") unless one of the few limited, enumerated grounds for non-recognition applies.  None of those grounds for deferring or denying confirmation applies here.

Moreover, although NIOC is an "instrumentality" of the Islamic Republic of Iran ("**Iran**") under the Foreign Sovereign Immunities Act ("**FSIA**"), it has no sovereign immunity from the confirmation of the Award.  *First*, pursuant to Section 1605(a)(6), foreign sovereigns enjoy no immunity from actions "to confirm an award made pursuant to . . . an agreement to arbitrate" where "the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."  28 U.S.C. § 1605(a)(6).  The Award is governed by such a treaty—the New York Convention.  *Second*, under Section 1605(a)(1), a foreign sovereign has no immunity "in any case in which [it] has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  As a party to the New York Convention, Iran has agreed to waive immunity from any US enforcement proceedings commenced under the Convention against itself, its political divisions, or its instrumentalities such as NIOC.  NIOC also waived its immunity by agreeing to arbitrate any dispute related to the GSPC and be bound by any award issued from such arbitration proceedings.

Accordingly, this Court should confirm the Award and enter judgment against NIOC.

## FACTUAL BACKGROUND

### A.   NIOC's Breach of the GSPC

On April 25, 2001, Crescent Petroleum and NIOC entered into the GSPC, pursuant to which NIOC was to supply to Crescent Petroleum specified quantities of natural gas at the price and the terms provided therein for a minimum period of 25 years, commencing on December 1, 2005.[1]  Petition ¶ 11.  Crescent Petroleum is incorporated under the laws of Bermuda and headquartered in Sharjah, United Arab Emirates (the "**UAE**").  *Id.* ¶ 1.  NIOC is a state-owned oil company owned and overseen by Iran through its Ministry of Petroleum.  *Id.* ¶ 3.  The GSPC is governed by the laws of Iran.  *Id.* ¶ 19.

On July 26, 2003, Crescent Petroleum assigned its rights and obligations under the GSPC to Crescent Gas in accordance with Article 16 of the GSPC, before NIOC was due to make its first delivery of gas.  *Id.* ¶ 11.  Crescent Gas is a wholly owned subsidiary of Crescent Petroleum and is incorporated under the laws of the British Virgin Islands.  *Id.* ¶ 2.

Crescent made significant investments to build a market in the UAE where it expected to sell gas processed from the raw, untreated gas it was to purchase from NIOC, including up-front costs of over $300 million to build the necessary infrastructure as well as to conclude contracts for gas transportation, sweetening, processing, and sales of processed gas to end-user customers.  *Id.* ¶ 12.  Crescent also expended immense time and effort to secure major local utilities as large-volume "anchor" customers and other buyers to build the market foundations so that the supply chain contemplated under the GSPC could be implemented.  *Id.*

---

[1]  The GSPC was amended eight times, by two amendment agreements dated April 25, 2001 and March 17, 2003 and six "side letters," of which only the fourth (dated April 25, 2001), fifth (dated March 17, 2003) and sixth (dated July 7, 2004) remain in force.  All the amendments and the six "side letters" are incorporated in Exhibit B to the accompanying Declaration of Dennis H. Hranitzky ("**Hranitzky Decl.**," the exhibits to which, "**Ex.__**").

As part of its arrangements to market downstream sales of gas, Crescent established a partly-owned subsidiary, Crescent National Gas Corporation Limited ("**CNGC**"), to enter into various contractual transactions with downstream vendors and end-customers to facilitate delivery.  *Id*. ¶ 13.  CNGC is co-owned by Crescent Gas (holding 65% of the shares) and Dana Gas PJSC (holding 35% of the shares), a public company listed on the Abu Dhabi Stock Exchange associated with Crescent.  Crescent Gas and CNGC separately entered into a gas supply agreement at arm's length (the "**CGC-CNGC GSA**") so that CNGC could meet its commitments to its contractors and customers.  *Id*.  The CGC-CNGC GSA operated broadly back-to-back with the GSPC.

NIOC never delivered any Gas to Crescent pursuant to the GSPC.  *Id*. ¶ 14.  In view of NIOC's clear breach of its contractual obligations, Crescent terminated the GSPC on September 11, 2018.  *Id*. ¶ 16.

### B.    The Arbitration Proceedings

After failing to resolve the dispute amicably with NIOC, Crescent commenced the Arbitration by serving a notice of arbitration pursuant to Article 22 of the GSPC and Annex 2 thereto on July 15, 2009.  *Id*. ¶¶ 15, 20.  Article 22 of the GSPC provides for "arbitration before three arbitrators, in accordance with a 'Procedures for Arbitration'" as prescribed in Annex 2 of the Contract of any dispute related to the contract if such dispute cannot be amicably resolved.  Hranitzky Decl. Ex. B, Article 22.2.  It further states that "[a]ny award of the arbitrators shall be final and binding upon the Parties."  Petition ¶ 17.

Annex 2 to the GSPC, which outlines the "Procedures for Arbitration," provides that arbitration under the GSPC will proceed *ad hoc*, but the rules of the International Chamber of Commerce ("**ICC**") shall apply in case of any disagreement or gap regarding procedural rules.  Hranitzky Decl. Ex. B, Annex 2 ¶ 9.

4

In accordance with Annex 2 to the GSPC, the Tribunal was duly constituted.  Petition ¶ 22.  The Tribunal bifurcated the proceedings into two phases: (1) a first phase covering jurisdictional issues and liability (the "**Jurisdiction and Liability Phase**"); and (2) a second phase covering remedies (the "**Remedies Phase**").  *Id*. ¶ 23.

### 1.     The Jurisdiction and Liability Phase

After several rounds of written submissions from both parties and two sessions of hearings, the Tribunal issued a partial award resolving issues raised in the Jurisdiction and Liability Phase on July 31, 2014 (the "**Liability Award**").  *Id*. ¶ 24.

As of July 31, 2014, the Tribunal was constituted by Dr. Griffith QC, Dr. Hossain, and Dr. Assadollah Noori.  *Id*. at ¶ 24.  Specifically, the Liability Award:

(i)     confirmed that the Tribunal had jurisdiction over Crescent's claims against NIOC;

(ii)    declared that the GSPC was valid and binding on Crescent and NIOC;

(iii)   declared that Crescent Gas was a valid claimant in the Arbitration by virtue of Crescent Petroleum's assignment of its rights and obligations under the GSPC to Crescent Gas;

(iv)    declared that NIOC had been in breach of the GSPC since December 1, 2005 and remained in breach of its obligation to deliver gas under the terms of the GSPC; and

(v)     dismissed NIOC's defenses and counterclaims;

(vi)    reserved questions concerning costs, fees and expenses.

*Id*. ¶ 26.

In accordance with paragraph 8(f) of Annex 2 to the GSPC, the Liability Award was issued by a majority of the Tribunal, with Dr. Noori (NIOC's appointed arbitrator) dissenting. *Id*. ¶ 25.  Although Dr. Noori did not join the majority, all three members of the Tribunal participated in extensive deliberations and shared comments on drafts of the Award.

NIOC attempted—and failed—to challenge the Liability Award in the English courts. On August 23, 2014, NIOC filed a frivolous challenge to the Liability Award in the High

Court of England and Wales pursuant to the English Arbitration Act 1996. *Id*. ¶ 27. On March 4, 2016, the English Court rejected NIOC's challenges to the Liability Award on all but two grounds: (1) that the decision to issue the Liability Award was defective because Dr. Noori was excluded from the Tribunal's deliberations; and (2) that the Tribunal failed to "police" counsel's "'aggressive' submissions" during the proceedings. *Id*. ¶ 28. Prior to the scheduled hearing of its remaining challenges, NIOC suddenly filed a notice of discontinuance of the proceedings before the English High Court in an evident attempt to seek to preserve grounds of appeal to resist enforcement at a later stage. *Id*. On July 18, 2016, the English High Court definitively dismissed these remaining two grounds and concluded the proceeding, ordering NIOC to pay Crescent's costs on an indemnity basis. *Id*.

### 2.    The Remedies Phase and the Award

While NIOC's challenge of the Liability Award was pending before the English High Court, the Arbitration entered the Remedies Phase. *Id*. ¶ 29. On August 22, 2016, Dr. Noori resigned from the membership of the Tribunal. *Id*. ¶ 30. In accordance with Annex 2 to the GSPC, NIOC nominated Mr. Makhdoom Ali Khan, a national of Pakistan, as its replacement arbitrator. *Id*.

After holding a remedies hearing and two rounds of post-hearing submissions by the parties, the Tribunal—which then constituted Dr. Griffith, Dr. Hossain, and Mr. Khan—held closing arguments in The Hague from October 1 to 5, 2017. *Id*. ¶¶ 30, 31. On the final day of the closing arguments, the parties agreed to give the Tribunal as such time it would need to issue an award pursuant to paragraph 8(e) of Annex 2 to the GSPC and "confirmed that it had had a full complete opportunity to present its case."[2] *Id*. ¶ 31.

---

[2]   Paragraph 8(e) of Annex 2 to the GSPC provides that "the tribunal shall issue its final award within 60 (sixty) days of the last hearing of the substantive issues in dispute between the Parties, unless the Parties otherwise agree in writing." Hranitzky Decl. Ex. B (GSPC), Annex 2 ¶ 8(e).

In August 2018, Dr. Hossain, resigned as an arbitrator from the proceeding.  *Id*. ¶ 32.

In accordance with Annex 2 to the GSPC, Crescent appointed Sir Jeremy Cooke, a national

of the United Kingdom, as replacement for Dr. Hossain as arbitrator.  *Id*.

On September 12, 2018, Crescent notified NIOC and the Tribunal of its challenge to

Dr. Griffith as arbitrator in accordance with Annex 2 to the GSPC.[3]  *Id*. ¶ 33.  Because

neither Dr. Griffith nor NIOC accepted Crescent's challenge, the ICC issued a decision

accepting the challenge to Dr. Griffith as arbitrator of the proceeding pursuant to Article 4(d)

of Annex 2 to the GSPC.  *Id*.  The two co-arbitrators, Sir Jeremy Cooke and Mr. Khan,

agreed to appoint the Honorable Murray Gleeson AC, a national of Australia, as replacement

for Dr. Griffith and chairman of the Tribunal.  *Id*.

On September 25, 2019, while the Tribunal and the parties were in the process of

preparing for the hearing scheduled for October 2019, Mr. Khan resigned as an arbitrator

from the proceeding.  *Id*. ¶ 34.  By the parties' agreement, the Rt. Hon. The Lord Phillips of

Worth Matravers, KG, PC was appointed as replacement for Mr. Khan and arbitrator of the

Tribunal.  *Id*.

Between August 3 and 7, 2020, the reconstituted Tribunal held a final hearing at the

International Dispute Resolution Centre ("**IDRC**") in London.  *Id*. ¶ 35.  Upon the Tribunal's

request, the parties agreed to abrogate the time limit set out in paragraph 8(e) of Annex 2 to

---

[3]  In relevant part, paragraph 4(d) of Annex 2 to the GSPC provides:

> a Party who intends to Challenge an arbitrator shall send written
> notice of his challenge (with reasons for his challenge) to the
> other Party, the challenged arbitrator and the other members of
> the arbitral tribunal within thirty (30} days after the appointment
> of the challenged arbitrator has been notified to the challenging
> Party or within thirty (30) days after the circumstances giving
> rise to the challenge became known to that Party. If the challenge
> is not accepted by the arbitrator or the other Party. a decision
> on the challenge shall be made within forty (40) days by the
> International Chamber of Commerce (ICC).

Hranitzky Decl. Ex. B (GSPC), Annex 2 ¶ 4(d).

the GSPC with respect to the issuance of the final award in the arbitration.  *Id*.  On September

27, 2021, the Tribunal unanimously rendered the Award in London, United Kingdom based

on the parties' extensive submissions and arguments.  *Id*. ¶ 36.  The Award required NIOC to

pay Crescent the sum of $2,429.97 million within three months of the date of the award.  *Id*.

¶ 37.  Specifically, the Award was rendered upon the Tribunal's declaration that NIOC was

liable to pay damages for both (i) Crescent Gas' lost of profits under the GPSC (in the

amount of $1,344.7 million, and (ii) Crescent Gas' liability to CNGC for CNGC's lost profits

under the CGC-CNGC GSA (in the amount of $1,085.27 million).  *Id*.

     The Tribunal further ordered post-award interest at the rate of 12 month EIBOR + 1

percentage point, compounding annually, commencing from three months from the date of

the Award.  *Id*. ¶ 38.  The Tribunal reserved decision on any requests for fees, costs, and

expenses, including the parties' cost of legal representation.  *Id*.

     The Tribunal dismissed NIOC's objection that the Tribunal had no jurisdiction to

resolve issues between CGC and CNGC.  *Id*. ¶ 39.  It also dismissed NIOC's defenses based

on Iranian law that force majeure affecting NIOC's facilities to supply gas to Crescent would

have precluded Crescent's indemnity claim with respect to NIOC's liability for loss suffered

by CNGC, that CNGC's involvement was not foreseeable, and that the absence of any claim

brought by CNGC against Crescent Gas is fatal to Crescent's indemnity claim.  *Id*.  NIOC's

arguments that international sanctions against Iran would have rendered Crescent's

performance of the GSPC impossible, entitling NIOC to terminate the GSPC were also

rejected.  *Id*.

     NIOC was ordered to pay to CGC, within three months of the date of the Award, and

the total principal amount under the Award thus became due and payable on December 27,

2021.  *Id*. ¶ 41.  To date, NIOC has failed to pay any part of the Award or post-award interest

to Crescent.  *Id*.

Under Annex 2 to the GSPC, the parties originally formulated a timeframe for the arbitration procedure whereby a final award will be issued within 500 days after the first arbitrator is appointed, plus the lapse of time between any reply to counterclaim and the hearing. *Id.* ¶ 40. In stark contrast to the parties' original intention to streamline the resolution process, the Arbitration dragged on for nearly thirteen years since Crescent first commenced the proceeding in 2009 due to NIOC's multiple attempts to impose unnecessary hurdles and delays throughout the process. *Id.*

NIOC has filed two challenges to the Award in the High Court of England and Wales. First, NIOC filed an application pursuant to Section 67 of the English Arbitration Act raising a new jurisdictional objection under Iranian law, which it failed to raise in the Arbitration despite the over ten-year duration of the proceedings. *Id.* ¶ 43. Crescent thus has filed an application requesting the court to determine that NIOC is precluded from asserting this jurisdictional objection under the English Arbitration Act. *Id.* In the alternative, Crescent requested the court to summarily dispose of NIOC's challenge as it had no real prospect of success and should not proceed to a full hearing. Notably, in this objection, NIOC challenged only the portion of the Award that granted money damages to Crescent for Crescent Gas' liability to CNGC for CNGC's lost profits under the CGC-CNGC GSA. *Id.* Thus, a significant portion of the Award of $1,344.70 million for CGC's loss of profits is unchallenged. *Id.* The parties have agreed by a consent order that Crescent's application should be heard separately from NIOC's Section 67 challenge. A hearing on Crescent's application has been scheduled for July 11 and 12, 2022. *Id.*

Second, pursuant to Section 69 of the Arbitration Act 1996, NIOC has challenged a single point of law decided by the Tribunal—namely, whether the Tribunal correctly decided that NIOC was precluded from relitigating certain defenses at the Remedies Phase which, if upheld, would have reduced the total amount of damages payable to Crescent. *Id.* ¶ 44.

Crescent has filed an application opposing the Section 69 challenge on the grounds that the parties agreed in their arbitration agreement to exclude the right of appeal under Section 69 of the Act by incorporation of the ICC Rules.  *Id*.  Although the arbitration agreement in the GSPC is silent in respect of appeals on points of law, the ICC Rules, which the parties agreed shall be used to fill any gaps, do not permit such appeals.  *Id*.  Thus, Crescent maintains that the court lacks jurisdiction over NIOC's Section 69 challenge.  *Id*.  As to the merits of NIOC's Section 69 challenge, Crescent submitted that none of the requirements under Section 69 are met, and that the general principle is to assume that the tribunals have applied the law correctly and to uphold arbitral awards.  *Id*.  A hearing on both Crescent's application and NIOC's substantive Section 69 challenge was held on May 11 and 12, 2022.  *Id*.

## **ARGUMENT**

### I.      **The New York Convention and US Law Require Confirmation of the Award.**

The FAA governs the enforcement of international arbitral awards.  Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq*., incorporates the treaty obligations of the United States under the New York Convention, making the rules and procedures set forth in the Convention applicable in confirmation proceedings brought in the courts of the United States.  *See* 9 U.S.C. § 201.  Because the Award arose out of a commercial contract—the GSPC—between Crescent Petroleum and Crescent Gas (which are incorporated in Bermuda and British Virgin Islands, respectively) and NIOC (an instrumentality of Iran[4]), it is governed by the New York Convention.  *See* 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship was "entirely between citizens of the United States").

---

[4]   As set forth *infra* at 18, 19, NIOC is an "agency or instrumentality" of Iran as defined by Section 1603(b) of the FSIA.

The New York Convention requires a court in a contracting country to confirm an award subject to the Convention, unless the award debtor has overcome its heavy burden to prove that one of seven specific grounds for deferring or refusing confirmation as set forth in Article V of the Convention applies.  *See* 9 U.S.C. § 207; *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) ("the Convention is "clear" that a court "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.") (internal citations omitted); *Sterling Merchant Fin. Ltd. v. Republic of Cabo Verde*, 261 F. Supp. 3d 48, 53 (D.D.C. 2017) (quoting *Gold Reserve, Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015)) ("The party resisting confirmation 'bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies.'").

In summary, Article V of the Convention permits courts to deny confirmation where:

- the parties' arbitration agreement is invalid or that the parties to the agreement were under incapacity under the applicable laws (art. V (1)(a));

- the award debtor was not given proper notice of the arbitration proceedings or was otherwise unable to present his case (art. V(1)(b));

- the award resolves issues that were beyond the scope of the submission to arbitration (art. V(1)(c));

- the arbitral procedure, including the composition of the tribunal, was inconsistent with the parties' agreement (or, if no applicable agreement exists, inconsistent with the law of the country where the arbitration took place) (art. V(1)(d));

- the award is not yet binding on the parties or has been set aside by a competent authority (art. V(1)(e));

- the subject matter of the dispute "is not capable of settlement by arbitration" under the law of the country where confirmation is sought (art. V(2)(a)); or

- confirming the award would contravene the public policy of the country where confirmation is sought (art. V(2)(b)).

*See* New York Convention art. V.

11

Courts in this and other circuits have consistently cautioned that these grounds for deferring or denying confirmation are to be construed narrowly. *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 110 (D.D.C. 2017) (characterizing "scope of [] review" under New York Convention as "narrow"); *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier*, 508 F.2d 969, 976 (2d Cir. 1974) (holding "defense[s] to enforcement of a foreign award . . . should be construed narrowly" to "comport with the enforcement-facilitating thrust of the Convention"); *Ministry of Def. of the Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1364 n.11 (9th Cir. 1989) ("Courts construe . . . defenses to enforcement narrowly."); *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) ("Defenses to enforcement under the New York Convention are construed narrowly, 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts . . .'").

NIOC cannot satisfy its heavy burden of proving that any of these exceptions to enforcement applies.

### A.    Crescent and NIOC Entered into a Valid Arbitration Agreement.

Under the New York Convention, confirmation of an award may be deferred or denied if "the parties to the agreement referred to in article II [*i.e.*, an agreement to arbitrate] were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made."  New York Convention, art. V(1)(a).

The GSPC plainly contains a valid arbitration clause, which permits either party to commence arbitration with respect to any dispute concerning the agreement or the breach thereof if such dispute cannot be amicably resolved.  Hranitzky Decl. Ex. B, Article 22.2

("Any dispute, controversy or claim arising out of or in relation to this Contract, or the breach . . . shall be finally settled by arbitration before three arbitrators, in accordance with [Annex 2] which will survive the termination or suspension of this Contract.").  Crescent exercised this option by serving a Notice of Arbitration on NIOC on July 15, 2009, and NIOC responded to this notice on November 12, 2009.  Petition ¶ 20.  There is no indication that the parties' agreement to arbitrate is invalid, and nor did NIOC specifically challenge the validity of the agreement to arbitrate Crescent's claim during the Arbitration.

> **B.    NIOC Had Proper Notice of the Arbitration and Presented Its Case.**

Confirmation of an award can also be deferred or denied if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present [its] case."  New York Convention art. V(1)(b).

Article V(1)(b) plainly does not apply here.  Crescent served NIOC with a Notice of Arbitration on July 15, 2009, to which NIOC responded on November 12, 2009.  Petition ¶ 20.  From that point, NIOC participated fully at each stage of the proceedings.  Indeed, NIOC was represented by able counsel which mounted multiple defenses on its behalf, both as to liability and as to damages.  NIOC submitted the various submissions, evidence, and briefing that the Tribunal requested, and participated in each of the hearings.  Moreover, although multiple arbitrators it selected resigned over the course of the 12-year arbitration, NIOC was able to reappoint a new arbitrator after these resignations in accordance with the procedures under the GSPC.  *See, e.g., id*. ¶ 34.  In fact, during the closing argument in the Remedies Phase held on October 5, 2017, NIOC "confirmed that it had had a full and complete opportunity to present its case."  *Id*. ¶ 31.  In view of these facts, there can be no serious argument that NIOC lacked notice of the Arbitration or was somehow unable to present its case.

13

**C.     The Arbitration Covered a Dispute Squarely within the Scope of the Arbitration Agreement.**

Confirmation of an award may be also deferred or refused where "the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced."  New York Convention art. V(1)(c).

The Award is based on the issues that Crescent submitted to arbitration—namely, whether NIOC breached the GSPC by failing to deliver gas to Crescent, and if so, what remedies Crescent is entitled to as a result of that breach.  *See* Petition ¶ 23, 26, 37-39.  NIOC never argued during the Arbitration that the dispute fell outside of the broad arbitration provision under the GSPC, which permits the parties to submit to arbitration "any dispute arising out of or in connection with [the GSPC] or the breach, termination or invalidity thereof."  Hranitzky Decl. Ex. B, Article 22.2.  The Award moreover "arise[s] out of or is in connection with" the GSPC as it directly holds NIOC liable for its failure to perform its obligation under that contract.

**D.     The Composition of the Tribunal and the Procedures Used in the Arbitration Were Consistent with the Parties' Arbitration Agreement.**

A court may defer or deny confirmation under the New York Convention if it finds that "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place."  New York Convention art. V(1)(d).

The parties agreed that arbitration under the GSPC will proceed *ad hoc* pursuant to the "Procedures for Arbitration" set forth in Annex 2, and ICC rules shall apply in case of any disagreement or gap regarding procedural rules.  Hranitzky Decl. Ex. B, Annex 2 ¶ 9.  In accordance with Annex 2, Crescent commenced the Arbitration by serving a notice of arbitration, to which NIOC duly responded.  Petition ¶ 20.  The Tribunal was then constituted in accordance with the appointment procedures under Annex 2 to the GSPC as agreed by the parties.  *Id*. ¶ 22.  NIOC was also able to reappoint a new arbitrator when one of the arbitrators it had selected resigned from the proceeding.  *See, e.g., id*. ¶ 34.  There is no indication that the procedures used in the Arbitration, including the appointment of arbitrators, were inconsistent with the GSPC or the ICC rules.

### E.    The Award is Binding and Has Not Been Set Aside at the Seat of Arbitration.

The New York Convention also permits a court to refuse the recognition and enforcement of an award if the party opposing the application can prove that "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  New York Convention art. V(1)(e).  The phrase "[t]he country in which or under whose arbitral law an award was made is considered the 'primary jurisdiction . . . that is, the country where the arbitration occurred or under whose law the arbitral award was made."  *Salini Costruttori S.p.A. v. Kingdom of Morocco*, 233 F. Supp. 3d 190, 197 (D.D.C. 2017) (citing *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d at 731).  The primary jurisdiction of the Award here is United Kingdom, where the Tribunal was seated.

The Award became final and binding when it was issued by the Tribunal pursuant to Article 22.2 of the GSPC, which provides that "[a]ny award" from "arbitration before three arbitrators" that proceeded "in accordance with [Annex 2 of the GSPC] . . . shall be final and binding upon the Parties."  Hranitzky Decl. Ex. B (GSPC), Article 22.2.  NIOC's challenge to

15

the Liability Award has already been dismissed by the English High Court.  Although

NIOC's challenges of the Award pursuant to sections 67 and 69 of the English Arbitration

Act remain pending, the English courts have not ruled on either challenge to set aside or

suspend the Award.  The Award therefore remains binding upon the parties and there is no

basis to delay the confirmation of the Award.  *Gold Rsrv. Inc. v. Bolivarian Republic of

Venezuela*, 146 F. Supp. 3d 112, 137 (D.D.C. 2015) (granting petition to confirm award while

appeal challenging validity of the award was pending in the primary jurisdiction); *Iraq

Telecom Ltd. v. IBL Bank S.A.L.*, 2022 WL 1063954, at *6 (S.D.N.Y. Apr. 8, 2022)

(declining to refuse to confirm foreign award because of a pending annulment proceeding).

      NIOC's Section 69 challenge is a frivolous attempt to appeal a point of law in which

NIOC alleges that the Tribunal made an appealable error of law by dismissing various

defenses raised by NIOC in the Remedies Phase that would have reduced the amount of

damages payable to Crescent.  Crescent has contested the English Court's jurisdiction to hear

NIOC's Section 69 challenge on the grounds that the parties agreed in their arbitration

agreement to exclude the right of appeal under Section 69 of the Act by incorporation of the

ICC Rules, which is utilized to fill any gaps in the *ad hoc* procedures pursuant to Annex 2 to

the GSPC.  Even in the unlikely event that Crescent does not prevail on this jurisdictional

challenge, the English Court would still have to consider the alleged legal error in order to

disturb the Award.

      NIOC's Section 67 challenge is similarly weak.  As an initial matter, this challenge

applies only to a portion of the Award in that it contests only the Tribunal's jurisdiction to

award the CGC liability losses to CNGC.  It does not challenge the Award with respect to the

$1,344.70 million for CGC's direct loss of profits under the GSPC.  Furthermore, the Section

67 Challenge cannot succeed on the merits.  First, NIOC has belatedly sought to raise a new

jurisdictional objection under Iranian law, which it failed to raise in the Arbitration.  Crescent

therefore contends that NIOC is precluded from raising the jurisdictional objection under the English Arbitration Act.  Further, even if the objection were admissible, the challenge has no real prospect of success given that is a thinly veiled attempt to reargue the merits of NIOC's Iranian law case.

Neither of these ill-fated challenges is a bar to the immediate confirmation of the Award.

**F.  US Law Permits—Indeed, Strongly Favors—Arbitration for the Resolution of International Commercial Disputes.**

The New York Convention permits courts "in the country where recognition and enforcement is sought" to defer or refuse confirmation of an award where "[t]he subject matter of the difference [*i.e.*, the dispute submitted to arbitration] is not capable of settlement by arbitration under the law of that country."  New York Convention art. V(2)(a).

NIOC cannot seriously invoke this basis to urge denying the confirmation of the Award.  Indeed, US courts have long favored arbitration for the resolution of disputes arising out of international commercial contracts like the GSPC here. "The Supreme Court has recognized an 'emphatic federal policy in favor of arbitral dispute resolution,'" and "'that federal policy applies with special force in the field of international commerce.'"  *Belize Soc. Dev.*, 668 F.3d at 727 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  Confirmation of the Award is entirely consistent with and even advances this policy by ensuring that awards from arbitration proceedings are recognized and enforced by courts.

**G.  Confirmation of the Award is consistent with the public policy of the United States.**

Finally, the New York Convention authorizes a court "in the country where recognition and enforcement is sought" to decline to confirm an award if "[t]he recognition or enforcement of the award would be contrary to the public policy of that country."  New York

17

Convention art. V(2)(b).  The public policy exception is construed extremely narrowly and applies only "where enforcement would violate the forum state's most basic notions of morality and injustice."  *Newco Ltd. v. Government of Belize*, 650 Fed. Appx.14, 16 (D.C. Cir. 2016).

NIOC cannot show how recognition and enforcement of the Award against it would contravene the US' most basic notions of morality and injustice.  To the contrary, US policy strongly favors "ensuring that private arbitration agreements are enforced according to their terms" and "confirmation of foreign arbitration awards."  *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 70 (D.D.C. 2013) (citing *AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011) and *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1098 (9th Cir. 2011)).  The Award was issued following arbitration procedures in accordance with the terms of the GSPC; confirmation of the Award thus does not offend, and instead is consistent with the public policy of the US.

**H.    NIOC Has No Sovereign Immunity Defense.**

The FSIA governs the immunity of foreign sovereigns and their "instrumentalities" from the jurisdiction of US courts.  While foreign sovereigns generally are immune from suit in the United States, the FSIA vests federal district courts with jurisdiction over actions "against a foreign state . . . with respect to which the foreign state is not entitled to immunity under" any one of several exceptions enumerated in Sections 1605–07 of the FSIA.  28 § U.S.C. 1330.

NIOC is owned and overseen by Iran through its Ministry of Petroleum.  Petition ¶ 3. Courts in this District have previously found that the NIOC is an "agency or instrumentality" of Iran as defined by Section 1603(b) of the FSIA, and therefore subject to the jurisdiction of US courts when one of the exceptions to immunity under the FSIA is met.  *See Holladay v.*

*Islamic Republic of Iran*, 523 F. Supp. 3d 100, 111 (D.D.C. 2021) ("The Court therefore concludes that NIOC is an agency or instrumentality of Iran . . . "); *Est. of Fishbeck v. Islamic Republic of Iran*, No. 18-CV-2248 (CRC), 2021 WL 6808189, at *3 (D.D.C. Mar. 1, 2021).

Two such exceptions apply here. *First*, under Section 1605(a)(6), foreign states have no jurisdictional immunity from an action "to confirm an award made pursuant to" an arbitration agreement "made by the foreign state," where "the award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). This is such an action as Crescent seeks confirmation of the Award under the New York Convention. *See Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 33 (D.D.C. 2016) (internal citations omitted) ("The New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception [under 28 U.S.C. § 1605(a)(6)].") As explained *supra*, the Award is governed by the New York Convention because it arose out of a commercial contract—the GSPC—for the trading of gas between Crescent and NIOC, neither of which is a US citizen. *See* 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship was "entirely between citizens of the United States").

*Second*, Section 1605(a)(1) provides that a foreign state does not enjoy sovereign immunity "in any case . . . in which the foreign state has waived its immunity either explicitly by implication." By signing the New York Convention, Iran waived immunity from any US enforcement proceedings commenced under the Convention. *See Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019) (*per curiam*) ("a sovereign, by signing the New York Convention, waives its immunity from arbitration—enforcement actions in other signatory states"); *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999) (same).

Additionally, in agreeing to arbitrate claims with Crescent, NIOC waived its immunity to actions seeking to enforce an award issued pursuant to that agreement. *See, e.g.*, *Ipitrade Int'l, S.A. v. Federal Republic of Nigeria*, 465 F. Supp. 824, 826 (D.D.C. 1978) (holding Nigeria's entry into arbitration agreement waived sovereign immunity as to actions seeking enforcement of award issued thereunder); *M.B.L. Int'l Contractors, Inc. v. Republic of Trinidad and Tobago*, 725 F. Supp. 52, 55–56 (D.D.C. 1989) (a foreign state's agreeing to arbitrate the underlying dispute under the New York Convention waives sovereign immunity because otherwise it "would defeat the very purpose of the Convention").

NIOC therefore has no sovereign immunity defense to this Court's jurisdiction to confirm the Award.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should confirm the Award and incorporate its terms into a judgment against NIOC.

DATED:  May 16, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _____
    Dennis H. Hranitzky

    2755 E. Cottonwood Parkway, Suite 430
    Salt Lake City, UT 84121
    801-505-7300 Main Office Number
    801-515-7400 FAX

    Debra O'Gorman (*pro hac vice forthcoming*)
    Yvonne Yi Zhang (*pro hac vice forthcoming*)

    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    212-849-7000 Main Office Number
    212-849-7100 FAX

*Attorneys for Petitioners Crescent Petroleum*
*Company International Limited and Crescent Gas*
*Corporation Limited*