# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CRESCENT PETROLEUM COMPANY INTERNATIONAL LIMITED<br>Walkers Corporate Bermuda Limited,<br>Park Place 55 Par-La-Ville Road,<br>Hamilton HM 11 Bermuda<br><br>and<br><br>CRESCENT GAS CORPORATION LIMITED<br>Wickhams Cay, P.O. Box 662,<br>Road Town, Tortola<br><br>       Petitioners,<br>  v.<br><br>NATIONAL IRANIAN OIL COMPANY,<br>Hafez Crossing, Taleghani Avenue<br>P.O. Box 1863, Tehran, Iran<br><br>       Respondent. | Case No. _____ |

**PETITION TO CONFIRM FOREIGN ARBITRATION AWARD**

Petitioners Crescent Petroleum Company International Limited and Crescent Gas Corporation Limited (together, "**Crescent**" or the "**Petitioners**") hereby move this Court for an order and judgment confirming the Award on Remedies dated September 27, 2021 (the "**Award**") rendered in the arbitration proceeding between Crescent and National Iranian Oil Company ("**NIOC**" or "**Respondent**"). The Award against NIOC should be recognized pursuant to the Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 201-208 ("**New York Convention**"), and a money judgment should be entered in Crescent's favor against NIOC in the amount of the Remedies Award and for such relief as the Court deems just and proper.

1

## PARTIES

1. Petitioner Crescent Petroleum Company International Limited ("**Crescent Petroleum**") is a company incorporated under the laws of Bermuda with its registered office at Walkers Corporate Bermuda Limited, Park Place 55 Par-la-Ville Road, Hamilton HM 11 Bermuda. It is part of the Crescent Petroleum group, a private oil and gas exploration and production company operating in the Middle East and headquartered at Crescent Tower, Al Buhaira Comiche, Sharjah, United Arab Emirates.

2. Petitioner Crescent Gas Corporation Limited ("**Crescent Gas**") is a company incorporated under the laws of the British Virgin Islands with an address at Wickhams Cay, PO Box 662, Road Town, Tortola. Crescent Gas is a wholly owned subsidiary of Crescent Petroleum.

3. Respondent NIOC is a state-owned oil company owned and overseen by the Islamic Republic of Iran ("**Iran**"), through its Ministry of Petroleum. It is organized under the laws of Iran and maintains its principal office at Hafez Crossing, Taleghani Avenue, P.O. Box 1863, Tehran, Iran. NIOC ranks as the world's second largest oil company. NIOC is an "agency or instrumentality" of the Government of Iran as defined by 28 U.S.C. § 1603(b).[1] *See Holladay v. Islamic Republic of Iran*, 523 F. Supp. 3d 100, 111 (D.D.C. 2021) ("The Court therefore concludes that NIOC is an agency or instrumentality of Iran . . . "); *Est. of Fishbeck v. Islamic Republic of Iran*, 18-CV-2248-CRC, 2021 WL 6808189, at *3 (D.D.C. Mar. 1, 2021). As described below, NIOC was the respondent in the arbitration proceeding that led to the Award.

---

[1] 28 U.S.C. § 1603(b) defines "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." The statute defines an "agency or instrumentality" as any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of the foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by the foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and, (e) nor created under the laws of any third country.

## JURISDICTION AND VENUE

4. This petition seeks confirmation of a foreign arbitral award pursuant to the New York Convention. The Award was rendered by an *ad hoc* arbitral tribunal (the "**Tribunal**") seated in London, United Kingdom, constituted in accordance with a Gas Sales and Purchase Contract (the "**GSPC**") entered into between Crescent Petroleum and NIOC in April 2001. A duly certified copy of the Award and the GSPC (including the amendments and side letters described below) are attached as Exhibit A, and B respectively, to the accompanying Declaration of Dennis H. Hranitzky ("**Hranitzky Decl.**," the exhibits to which, "**Ex._**").

5. This Court has subject matter jurisdiction over this action under 9 U.S.C. § 202, which provides, in relevant part: "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention;" and 9 U.S.C. § 203, which provides: "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." The Award against NIOC arose out of the parties' agreement to purchase and sell gas under the GSPC, a legal relationship that is commercial in nature, and therefore meets the criteria under 9 U.S.C. §§ 202 and 203.

6. The Court also has subject matter jurisdiction over this proceeding under Section 1605(a)(1) of the Foreign Sovereign Immunities Act (the "**FSIA**"), which grants federal district courts subject matter jurisdiction over foreign states including instrumentalities of a foreign state, in cases "in which the foreign state has waived its immunity either explicitly or by implication."

28 U.S.C. § 1605(a)(1). Under the FSIA, a "foreign state" includes "an agency or instrumentality of a foreign state" of which "a majority of whose shares or other ownership interest is owned by a foreign state." 28 U.S.C. § 1603(b)(2). NIOC waived its immunity from suit under 28 U.S.C. § 1605(a) by Iran's signing of the New York Convention and by agreeing to arbitrate disputes arising under the GSPC. *See* Hranitzky Decl. Ex. B (GSPC), Article 22.2 ("Any dispute, controversy or claim arising out of or relating to this Contract, or the breach, termination or validity or invalidity thereof shall be finally settled by arbitration before three arbitrators, in accordance with a 'Procedures for Arbitration' (attached hereto as Annex 2) . . . ")

7.  In addition, the Court has subject matter jurisdiction over this proceeding under Section 1605(a)(6) of the FSIA, which creates an exception to sovereign immunity for cases brought to confirm arbitral awards that "are or may be governed by a treaty or other international agreement in force for the United States calling for recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). The Award is governed by the New York Convention as it was rendered in the United Kingdom, a signatory to the New York Convention. "The New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception [under 28 U.S.C. § 1605(a)(6)]." *Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 33 (D.D.C. 2016) (internal citations omitted).

8.  This Court has personal jurisdiction over NIOC as an agency or instrumentality of the foreign state of Iran under 28 U.S.C §§ 1330(b) and 1603(a) which confers "[p]ersonal jurisdiction over a foreign state" and any "agency on instrumentality" thereof "as to every claim for relief" for which the foreign state is not entitled to sovereign immunity under 28 U.S.C §§ 1605-1607, and where service has been made under 28 U.S.C. § 1608(b).

9. Venue is proper in this District pursuant to 9 U.S.C § 204 and 28 U.S.C. § 1391(f)(4). Section 1391(f)(4) provides that a civil action against a foreign state as defined in FSIA § 1603 may be brought in the United States District Court for the District of Columbia.

## FACTUAL BACKGROUND

### The GSPC and the Underlying Dispute

10. The Award results from NIOC's total failure to fulfill its contractual obligation under the GSPC to supply gas to Crescent.

11. On April 25, 2001, Crescent Petroleum and NIOC entered into the GSPC, pursuant to which NIOC was to supply to Crescent Petroleum specified quantities of natural gas at the price and the terms provided therein for a minimum period of 25 years ("**Gas**"), commencing on December 1, 2005.[2] On July 26, 2003, Crescent Petroleum assigned its rights and obligations under the GSPC to Crescent Gas pursuant to Article 16 of the GSPC, before NIOC was due to make its first delivery of gas under the GSPC.

12. Crescent made significant investments to build a market in the UAE where it expected to sell gas processed from the raw, untreated gas it was to purchase from NIOC. In order to prepare for downstream deliveries, Crescent incurred over $300 million in up-front costs to establish the necessary infrastructure as well as to conclude contracts for gas transportation, sweetening, processing, and sales of processed gas to end-user customers. Those costs are in addition to the immense time and effort that Crescent expended to secure major local utilities as

---

[2] The GSPC was amended eight times, by two amendment agreements dated April 25, 2001 and March 17, 2003 and six "side letters," of which only the fourth (dated April 25, 2001), fifth (dated March 17, 2003) and sixth (dated July 7, 2004) remain in force. All the amendments and the six "side letters" are incorporated in Exhibit B to the Hranitzky Decl.

large-volume "anchor" customers and other buyers to build the market foundations so that the supply chain contemplated under the GSPC could be implemented.

13.   As part of its arrangements to market downstream sales of gas, Crescent established a partly-owned subsidiary, Crescent National Gas Corporation Limited ("**CNGC**"), to enter into various contractual transactions with downstream vendors and end-customers to facilitate delivery. CNGC is co-owned by Crescent Gas (holding 65% of the shares) and Dana Gas PJSC (holding 35% of the shares), a public company listed on the Abu Dhabi Stock Exchange associated with Crescent.  Crescent Gas and CNGC separately entered into a gas supply agreement dated June 8, 2005 (the "**CGC-CNGC GSA**") so that CNGC could meet its commitments to its contractors and customers.  The CGC-CNGC GSA operated broadly back-to-back with the GSPC.

14.   NIOC breached the GSPC by failing to deliver a single molecule of Gas to Crescent under the GSPC.

15.   After failing to resolve the dispute amicably with NIOC, and in light of NIOC's continuing breach and failure to supply Crescent with gas under the GSPC, Crescent commenced arbitration proceedings on July 15, 2009 pursuant to the GSPC (the "**Arbitration**").  At the commencement of the final hearing on liability in February 2013, Crescent abandoned its claim to specific performance, and sought only damages for its monetary losses.

16.   On September 11, 2018, Crescent terminated the GSPC.

17.   The GSPC provides for "arbitration before three arbitrators, in accordance with a 'Procedures for Arbitration'" as prescribed in Annex 2 of the GSPC of any dispute related to the GSPC if such dispute cannot be amicably resolved.  It further states that "[a]ny award of the arbitrators shall be final and binding upon the Parties."

18.   Article 22.2 of the GSPC provides:

> The Parties shall use all reasonable efforts to settle amicably within 60 days, through negotiations, any dispute arising out of or in connection with this Contract or the breach, termination or invalidity thereof. Any dispute, controversy or claim arising out of or in relation to this Contract, or the breach, termination or validity or invalidity thereof shall be finally settled by arbitration before three arbitrators, in accordance with a "Procedures for Arbitration" (attached hereto as Annex 2) which will survive the termination or suspension of this Contract. Any award of the arbitrators shall be final and binding upon the Parties. Either Party may seek execution of the award in any court having jurisdiction over the Party against which execution is sought.

Hranitzky Decl., Ex. B at Article 22.2.

19. The GSPC is governed by the laws of Iran. *Id*. at Article 22.1. In addition, paragraph 9 of Annex 2 to the GSPC provides that arbitration under the GSPC will proceed *ad hoc* "in accordance with the agreed 'Procedures for Arbitration'" set out in Annex 2 to the GSPC, but the rules of the International Chamber of Commerce ("**ICC**") shall apply in case of any disagreement or gap regarding procedural rules:

> The Parties shall decide on other procedural rules of arbitration, whenever and whatever it deems necessary, by mutual agreement However, in case of disagreement or gap in such procedural rules of arbitration, the procedural rules of arbitration of the International Chamber of Commerce (ICC) shall apply. Nevertheless, it will not be explicitly or implicitly interpreted as submission to International Chamber of Commerce's authority.

*Id*., Annex 2 ¶ 9.

### The Bifurcated Arbitration Proceedings

20. On July 15, 2009, Crescent commenced the Arbitration in accordance with the procedure provided in clause 22.2 and Annex 2 of the GSPC. Hranitzky Decl. Ex. A (the Award) at ¶¶ 12, 13. Crescent sought to be compensated for all losses flowing from NIOC's breach. NIOC served its response to Crescent's notice of arbitration on November 12, 2009. *Id*. at ¶ 13.

7

21. The seat of the Arbitration was London, as agreed to by the parties pursuant to Annex 2 to the GSPC. *Id*. at ¶ 20. The Permanent Court of Arbitration ("**PCA**") provided administrative services for the case. *Id*. at ¶ 21.

22. The Tribunal was duly constituted according to the procedures set forth in the Annex 2 to the GSPC.

23. On February 25, 2010, the Tribunal ordered the bifurcation of the proceedings into two phases: (1) a first phase covering jurisdictional issues and liability (the "**Jurisdiction and Liability Phase**"); and (2) if jurisdiction and liability were found, a second phase covering remedies (the "**Remedies Phase**"). *Id*. at ¶ 14.

*(a)     The Jurisdiction and Liability Phase*

24. After several rounds of written submissions from both parties and sessions of hearings, the Tribunal issued an award determining issues on jurisdiction and liability on July 31, 2014 (the "**Liability Award**"). *Id*. at ¶ 23. As of July 31, 2014, the Tribunal was constituted by Dr. Griffith QC, Dr. Hossain, and Dr. Assadollah Noori. *Id*. at ¶ 22.

25. In accordance with paragraph 8(f) of Annex 2 to the GSPC, the Liability Award was issued by a majority of the Tribunal, with Dr. Noori (NIOC's appointed arbitrator) dissenting. *See* Hranitzky Decl. Ex. A (the Award) at ¶ 23; *id*. Ex. B (GSPC), Annex 2 ¶ 8(f). Although Dr. Noori did not join the majority, all three members of the Tribunal participated in extensive deliberations and shared comments on drafts of the Award. Hranitzky Decl., Ex. A at ¶ 23.

26. Specifically, the Liability Award:

    (i) confirmed that the Tribunal had jurisdiction over Crescent's claims against NIOC;

    (ii) declared that the GSPC was valid and binding on Crescent and NIOC;

(iii) declared that Crescent Gas was a valid claimant in the Arbitration by virtue of Crescent Petroleum's assignment of its rights and obligations under the GSPC to Crescent Gas;

(iv) declared that NIOC had been in breach of the GSPC since December 1, 2005 and remained in breach of its obligation to deliver Gas under the terms of the GSPC; and

(v) dismissed NIOC's defenses and counterclaims;

(vi) reserved questions concerning costs, fees and expenses.

Hranitzky Decl. Ex. A at ¶ 23.

27. On August 23, 2014, NIOC filed a frivolous challenge to the Liability Award under Sections 67 and 68 of the English Arbitration Act in the High Court of England & Wales, which has supervisory jurisdiction over London-seated arbitrations under the English Arbitration Act 1996. *Id*. at ¶ 26.

28. On March 4, 2016, the English High Court, following a preliminary issues hearing, dismissed all but two of NIOC's challenges to the Liability Award. The two grounds which were left to be determined at a later substantive hearing were: (1) that the decision to issue the Liability Award was defective because Dr. Noori was excluded from the Tribunal's deliberations; and (2) that the Tribunal failed to "police" counsel's "'aggressive' submissions" during the proceedings. *Id.* at ¶ 59. Prior to the scheduled hearing of these remaining challenges, NIOC suddenly filed a notice of discontinuance of the proceedings before the English High Court in an evident attempt to seek to preserve grounds of appeal to resist enforcement at a later stage. *Id*. at ¶ 78. On July 18, 2016, the English High Court definitively dismissed these remaining two grounds and concluded the proceeding, ordering NIOC to pay Crescent's costs on an indemnity basis. *Id*.

29. As a result of the Liability Award, it was determined that NIOC breached the GSPC and the proceeding then moved to the remedies phase.

9

### (b) The Remedies Phase

30. While NIOC's challenge of the Liability Award was pending before the English High Court, the Arbitration entered its remedies phase. On August 22, 2016, Dr. Noori resigned from the Tribunal. *Id*. at ¶ 81. In accordance with Annex 2 to the GSPC, NIOC nominated Mr. Makhdoom Ali Khan, a national of Pakistan, as its replacement arbitrator. *Id*. at ¶ 82, 85. From November 3 to 23, 2016, the Tribunal—which then constituted Dr. Griffith, Dr. Hossain, and Mr. Makhdoom Ali Khan—convened a remedies hearing at the Peace Palace in The Hague, Netherlands. *Id*. at ¶ 91.

31. After two rounds of post-hearing submissions, the Tribunal held closing arguments in The Hague from October 1 to 5, 2017. *Id*. at ¶ 111. On the final day of the hearing, the parties agreed to dispense with the 60-day requirement set out in paragraph 8(e) of Annex 2 to the GSPC and instead give the Tribunal such time as it would need to issue an award.[3] *Id*. at ¶ 113. Each party also "confirmed that it had had a full and complete opportunity to present its case." *Id*.

32. In August 2018, Dr. Hossain, resigned as an arbitrator from the proceeding. *Id*. at ¶¶ 118-122. In accordance with Annex 2 to the GSPC, Crescent appointed Sir Jeremy Cooke, a national of the United Kingdom, as replacement for Dr. Hossain as arbitrator. *Id*. at ¶ 128. Sir Jeremy Cooke disclosed to the parties his prior connections with certain individuals involved in the Jurisdiction and Liability Phase of the Arbitration and prior professional participation in cases involving entities related to both Crescent and NIOC. *Id*. at ¶ 139. On November 1, 2018, NIOC indicated that it had no comments on Sir Jeremy Cooke's disclosure. *Id*.

---

[3] Paragraph 8(e) of Annex 2 to the GSPC provides that "the tribunal shall issue its final award within 60 (sixty) days of the last hearing of the substantive issues in dispute between the Parties, unless the Parties otherwise agree in writing." Hranitzky Decl. Ex. B (GSPC), Annex 2 ¶ 8(e).

33. On September 12, 2018, Crescent notified NIOC and the Tribunal of its challenge to Dr. Griffith as arbitrator in accordance with Annex 2 to the GSPC.[4] *Id*. at ¶ 127. Because neither Dr. Griffith or NIOC accepted Crescent's challenge, the ICC issued a decision accepting the challenge to Dr. Griffith as arbitrator of the proceeding pursuant to paragraph 4(d) of Annex 2 to the GSPC. *Id*. at ¶ 152. The two co-arbitrators, Sir Jeremy Cooke and Mr. Khan, agreed to appoint the Honorable Murray Gleeson AC, a national of Australia, as replacement for Dr. Griffith and chairman of the Tribunal. *Id*. at ¶ 163.

34. On September 25, 2019, while the Tribunal and the parties were in the process of preparing for the hearing scheduled for October 2019, Mr. Khan resigned as an arbitrator from the proceeding. *Id*. at ¶¶ 195, 196. By the parties' agreement, the Rt. Hon. The Lord Phillips of Worth Matravers, KG, PC was appointed as replacement for Mr. Khan and arbitrator of the Tribunal. *Id*. at ¶¶ 208, 211.

35. Between August 3 and 7, 2020, the reconstituted Tribunal held a final hearing at the International Dispute Resolution Centre ("**IDRC**") in London. *Id*. ¶ 251. Due to travel and quarantine restrictions related to the COVID-19 pandemic in place at the time, the hearing proceeded in a hybrid format with Sir Jeremy Cooke, the Rt. Hon. The Lord Phillips of Worth

---

[4] In relevant part, paragraph 4(d) of Annex 2 to the GSPC provides:

> a Party who intends to Challenge an arbitrator shall send written notice of his challenge (with reasons for his challenge) to the other Party, the challenged arbitrator and the other members of the arbitral tribunal within thirty (30) days after the appointment of the challenged arbitrator has been notified to the challenging Party or within thirty (30) days after the circumstances giving rise to the challenge became known to that Party. If the challenge is not accepted by the arbitrator or the other Party. a decision on the challenge shall be made within forty (40) days by the International Chamber of Commerce (ICC).

Hranitzky Decl. Ex. B (GSPC), Annex 2 ¶ 4(d).

Matravers, KG, PC, counsel from both parties making oral arguments physically attending in London, and the Hon. Murray Gleeson and other participants joining via video conferencing. *Id*. Upon the Tribunal's request, the parties agreed to abrogate the time limit set out in paragraph 8(e) of Annex 2 to the GSPC with respect to the issuance of the final award in the arbitration. *Id*. ¶¶ 227-229.

### The Award

36.     The unanimous Tribunal rendered the Award (which also incorporates the Liability Award by reference) on September 27, 2021 in London, United Kingdom after the final hearing on remedies. *See id*. at ¶ 16. The Award is final and binding upon the parties.

37.     The Tribunal ordered NIOC to pay Crescent the sum of $2,429,970,000 within three months of the date of the Award. *Id*. at ¶ 887, B. Specifically, the Award was rendered upon the Tribunal's declaration that NIOC was liable to pay damages for both (i) Crescent Gas' lost profits under the GPSC (in the amount of $1,344,700,000), and (ii) Crescent Gas' liability to CNGC for CNGC's lost profits under the CGC-CNGC GSA (in the amount of $1,085,270,000). *Id*. at ¶ 887, A.

38.     The Tribunal further ordered post-award interest at the rate of 12 month EIBOR + 1 percentage point, compounding annually, commencing from three months from the date of the Award. *Id.* at ¶ 887, C. The Tribunal reserved decision on any requests for fees, costs, and expenses, including the parties' cost of legal representation. *Id.* at ¶ 887, F.

39.     The Tribunal dismissed NIOC's objection that the Tribunal had no jurisdiction to resolve issues between CGC and CNGC. *Id*. at ¶ 555. The Tribunal also dismissed NIOC's defenses based on Iranian law that force majeure affecting NIOC's facilities to supply gas to Crescent would have precluded Crescent's indemnity claim with respect to NIOC's liability for

loss suffered by CNGC, that CNGC's involvement was not foreseeable, and that the absence of any claim brought by CNGC against Crescent Gas is fatal to Crescent's indemnity claim. *Id*. ¶¶ 556-571. NIOC's arguments that international sanctions against Iran would have rendered Crescent's performance of the GSPC impossible, entitling NIOC to terminate the GSPC were also rejected. *Id*. at ¶¶ 623, 624.

40. Under Annex 2 to the GSPC, the parties originally formulated a timeframe for the arbitration procedure whereby a final award will be issued within 500 days after the first arbitrator is appointed, plus the lapse of time between any reply to counterclaim and the hearing.[5] In stark contrast to the parties' original intention to streamline the resolution process, the Arbitration dragged on for nearly thirteen years since Crescent first commenced the proceeding in 2009 due to NIOC's multiple attempts to impose unnecessary hurdles and delays throughout the process.

41. NIOC was ordered to make payment within three months of the date of the Award, and the total principal amount under the Award thus became due and payable on December 27, 2021. *See id*. at ¶ 887, B, C. To date, NIOC has failed to pay any part of the Award or post-award interest to Crescent.

42. The Award has not been set aside or suspended by a competent authority of the country in which, or under the law of which, the Award was made.

---

[5] To avoid procedural delay, the parties agreed under Annex 2 to the GSPC to certain time limits for each stage of the arbitration procedure. Specifically, within *forty* days after the claimant issues a notice of appointment of an arbitrator, a second arbitrator will be appointed (Hranitzky Decl. Ex. B (GSPC), Annex 2 ¶ 4(b)); *twenty* days after such appointment, a third arbitrator will be selected to form a tribunal (*id*. ¶ 4(c)). After the constitution of a tribunal, the claimant shall within *ninety* days deliver a written statement of the case (*id*. ¶ 5), to which the respondent within *one hundred and twenty* days shall respond by delivering a statement of defense and any counterclaims (*id*.¶ 6). The claimant then shall reply to any counterclaim raised within *ninety* days (*id*.¶ 7). The tribunal shall issue a final award within *sixty* days of the last hearing of the substantive issues (*id*. (*id*.¶ 8(e)).

43. NIOC has filed two challenges to the Award in the High Court of England and Wales. First, NIOC filed an application pursuant to Section 67 of the English Arbitration Act raising a new jurisdictional objection under Iranian law, which it failed to raise in the Arbitration despite the over ten-year duration of the proceedings. Crescent thus has filed an application requesting the Court to determine that NIOC is precluded from asserting this jurisdictional objection under the Arbitration Act. In the alternative, Crescent requested the presiding court to summarily dispose of NIOC's challenge as it had no real prospect of success and should not proceed to a full hearing. Notably, in this objection, NIOC challenged only the portion of the Award that granted money damages to Crescent for Crescent Gas' liability to CNGC for CNGC's lost profits under the CGC-CNGC GSA. Thus, a significant portion of the Award of $1,344.70 million for Crescent Gas' loss of profits is unchallenged. The parties have agreed by a consent order that Crescent's application should be heard separately from NIOC's Section 67 challenge. A hearing on Crescent's application has been scheduled for July 11 and 12, 2022.

44. Second, pursuant to Section 69 of the Arbitration Act, NIOC has challenged a single point of law decided by the Tribunal—namely, whether the Tribunal correctly decided that NIOC was precluded from relitigating certain defenses at the Remedies Phase which, if upheld, would have reduced the total amount of damages payable to Crescent. Crescent has filed an application opposing the Section 69 challenge on the grounds that the Parties had agreed in the GSPC to exclude the right of appeal under Section 69 of the Act, by incorporating the ICC Rules to fill any gaps in the Parties' agreed *ad hoc* procedure. Although the "Procedures for Arbitration" in the GSPC are silent as to appeals on points of law, the ICC Rules, which the parties agreed shall be used to fill any gaps, do not permit such appeals. Thus, Crescent maintains that the court lacks jurisdiction over NIOC's Section 69 challenge. As to the merits of NIOC's Section 69 challenge,

Crescent submitted that none of the requirements under Section 69 are met, and that the general principle is to assume that the tribunals have applied the law correctly and to uphold arbitral awards. A hearing on both Crescent's application and NIOC's substantive Section 69 challenge was held on May 11 and 12, 2022.

## REQUEST FOR CONFIRMATION OF THE AWARD

45. The Award was rendered in accordance with the parties' GSPC in the proceedings administered by the PCA, in which both parties actively participated and were represented by qualified legal counsel.

46. The Award arose out of a legal relationship that is commercial in nature and is not entirely between citizens of the United States, thereby falling within the purview of the New York Convention. *See* 9 U.S.C. § 202.

47. The Award was issued in London, United Kingdom, a signatory to the New York Convention. *See* New York Convention, Art. I. Iran, the United States, as well as the Netherlands where parts of the Arbitration hearings took place, are also signatories to the New York Convention. *See* New York Convention, Art. I.

48. The Award is final and binding within the meaning of the New York Convention and the FAA and are therefore binding on the parties, and subject to recognition and enforcement in the United States pursuant to the New York Convention and the FAA.

49. The Award is final and binding under Article 22.2 of the GSPC, which provides that "[a]ny award" from "arbitration before three arbitrators" that proceeded "in accordance with [Annex 2 of the GSPC] . . . shall be final and binding upon the Parties." Hranitzky Decl. Ex. B (GSPC), Article 22.2.

50. The New York Convention and the FAA make recognition and enforcement mandatory unless one of the enumerated exceptions permitting non-recognition is established. *See* New York Convention, Arts. III, V; 9 U.S.C. § 207 (the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention"); *see also Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 844 F.3d 281, 283 (D.C. Cir. 2016). Moreover, the party opposing confirmation has the heavy burden of showing that such a ground applies. *Belize Bank Ltd.*, 191 F. Supp. 3d at 35 ("'[T]he burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation,' and the 'showing required to avoid summary confirmation is high.'") (internal citations omitted). None of the grounds for refusal or deferral of confirmation of the Awards applies here.

51. Additionally, NIOC may not claim sovereign immunity under the FSIA. The FSIA creates an exception to state immunity when a case is brought to "confirm an award made pursuant to . . . an agreement to arbitrate" and the award is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). The Award is governed by the New York Convention and therefore satisfies this FSIA exception, and NIOC cannot escape enforcement here.

52. NIOC has also impliedly waived its foreign sovereign immunity in this action by Iran's acceding to the New York Convention. *See* 28 U.S.C. § 1605(a)(1) (a foreign state is not immune from suit in U.S. courts where it has "waived its immunity either explicitly or by implication"). As a party to the New York Convention, Iran (which includes its instrumentalities such as NIOC) has agreed to waive immunity from any U.S. enforcement proceedings commenced under the Convention. *See Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019) (*per curiam*)

("a sovereign, by signing the New York Convention, waives its immunity from arbitration— enforcement actions in other signatory states")

53. Moreover, in agreeing to arbitrate claims with Crescent, NIOC waived its immunity to actions seeking to enforce an award issued pursuant to that agreement. *See*, *e.g.*, *Ipitrade Int'l, S.A. v. Federal Republic of Nigeria*, 465 F. Supp. 824, 826 (D.D.C. 1978) (holding Nigeria's entry into arbitration agreement waived sovereign immunity as to actions seeking enforcement of award issued thereunder); *M.B.L. Int'l Contractors, Inc. v. Republic of Trinidad and Tobago*, 725 F. Supp. 52, 55–56 (D.D.C. 1989) (a foreign state's agreeing to arbitrate the underlying dispute under the New York Convention waives sovereign immunity because otherwise it "would defeat the very purpose of the Convention").

54. This Petition is timely because it is filed within three years after the issuance of the Award. *See* 9 U.S.C. § 207.

55. Crescent intends to commenced the process of providing notice of this Petition to NIOC by delivery of a copy of the summons, the Petition, as well as the accompanying memorandum of law, declaration and exhibits in accordance with the notice provisions in the GSPC as soon as possible.[6] *See* Hranitzky Declaration ¶ 4; *id*. Ex. B (GSPC), Article 21. Pursuant to the FSIA, an agency or instrumentality of a foreign state is properly served by delivery of a copy

---

[6] The GSPC at Article 21 provides with respect to "Notices" that:

> Any notice, request, demand, statement or invoice provided for herein, or any notice which either Party may desire to give to the other, shall be in writing and shall considered duly delivered five (5) days after dispatching by international courier addressed to said Party at the address as specified below, or at such other address as either Party may hereinafter designate in writing.

It further sets out the address for NIOC for purpose of notice delivery to be: Taleghani Avenue, Tehran, I.R. of Iran, P.O. Box 1863.

of the summons and complaint in accordance with a special arrangement between the parties. 28 U.S.C. § 1608(b)(1) ("Service in the courts of the United States . . . shall be made upon an agency or instrumentality of a foreign state . . . by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality."); *Marlowe v. Argentine Naval Com'n*, 604 F. Supp. 703, 707-08 (D.D.C. 1985) (service of summons and complaint by mail was proper under the FSIA because the contract between the plaintiff and the defendant foreign state has a special agreement for the mailing of all notices, requests, demands, or other communications).

56.   Crescent is thus entitled to immediate confirmation, recognition and enforcement of the Award pursuant to 9 U.S.C. § 207 and Article III of the New York Convention, and entry of judgment in favor of Crescent and against NIOC in the full amount of the Award, with the interest and costs as provided therein accruing through the date of this Court's judgment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that the Court, pursuant to 9 U.S.C. § 207 and Article III of the New York Convention:

a) Enter an order confirming, recognizing, and enforcing the Final Award;

b) Enter a judgment for Petitioners and against Respondent, in an amount equal to the full amount of damages and interest under the Final Award, as follows:

   (1) $2,429.97 million for Petitioners' loss of profits and liability caused by Respondent's breach under the GSPC;

   (2) Post-award interest on the sum $2,429.97 million at the rate of 12 month EIBOR + 1 percentage point, compounding annually, commencing from December 27, 2021 until the date of judgment;

c) Award post-judgment interest at the rate applicable under 28 U.S.C. § 1961;

d) Retain jurisdiction over this action, and pursuant to Rule 69 of the Federal Rules of Civil Procedure, permit any discovery that may be proper to aid in the enforcement of the judgments; and

e) Grant any other relief that this Court, in the interests of justice, deems necessary and proper.

DATED: May 16, 2022

                               Respectfully submitted,

                               QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: _____
    Dennis H. Hranitzky
    D.C. Bar No. NY0117

        2755 E. Cottonwood Parkway, Suite 430
        Salt Lake City, UT 84121
        801-505-7300 Main Office Number
        801-515-7400 FAX

Debra O'Gorman (*pro hac vice forthcoming*)
Yvonne Yi Zhang (*pro hac vice forthcoming*)

        51 Madison Avenue, 22nd Floor
        New York, NY 10010
        212-849-7000 Main Office Number
        212-849-7100 FAX

*Attorneys for Petitioners Crescent Petroleum Company International Limited and Crescent Gas Corporation Limited*