UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRESCENT PETROLEUM COMPANY INTERNATIONAL LIMITED, et al., <br><br> Petitioners, <br><br> v. <br><br> NATIONAL IRANIAN OIL COMPANY, <br><br> Respondent. | Case No. 22-cv-1361 (JMC) |

## MEMORANDUM OPINION

In 2001, Petitioner Crescent Petroleum Company International Limited (Crescent Petroleum) entered a Gas Sales and Purchase Contract (GSPC) with Respondent National Iranian Oil Company (NIOC).[1] Shortly thereafter, Crescent Petroleum assigned its rights under the contract to Petitioner Crescent Gas Corporation Limited (CGC), its wholly owned subsidiary. Under the GSPC, NIOC was supposed to supply Petitioners with large quantities of natural gas to process and resell over a period of at least 25 years. Petitioners spent hundreds of millions of dollars in preparation for this arrangement, but NIOC never delivered any gas to them. Following NIOC's breach, Petitioners began arbitration proceedings. After almost thirteen years of protracted arbitration, in 2021, the arbitral tribunal issued a Final Award, ordering NIOC to pay Petitioners $2,429,970,000 for their damages plus post-award interest. But NIOC never paid Petitioners.

Petitioners thus filed an action to confirm their award so that they can obtain a judgment to enforce against NIOC. *See* ECF 1. NIOC failed to appear after being served, so Petitioners

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

moved for default judgment. *See* ECF 18. For the reasons explained below, the Court **GRANTS** Petitioners' motion for default judgment and, accordingly, their petition to confirm arbitration award.

## I.     BACKGROUND

### A. The GSPC and NIOC's Breach

The Court takes the following facts from Petitioners' pleadings, declarations, and supporting exhibits. On April 25, 2001, Crescent Petroleum and NIOC entered the GSPC. ECF 1 ¶ 11; ECF 1-5 ¶ 5. Crescent Petroleum is a Bermudian company and member of the Crescent Petroleum group, a private oil and gas exploration and production company headquartered in the United Arab Emirates (UAE). ECF 1-5 ¶ 1. NIOC is a state-owned oil company that is controlled by the Islamic Republic of Iran. ECF 1-5 ¶ 3.

The GSPC required NIOC to supply Crescent Petroleum with large quantities of natural gas for it to process and resell over a period of at least 25 years, beginning on December 1, 2005. ECF 1 ¶ 11; ECF 1-5 ¶ 7. The GSPC also included provisions governing dispute resolution. Specifically, the Parties agreed to submit their disputes to arbitration, and the contract detailed the arbitration procedures the Parties were bound to follow. ECF 1-6 at 40 (Art. 22.2); ECF 1-6 at 51–53 (Annex 2). Among those procedures, the GSPC provided that "[t]he place of arbitration shall be agreed upon by the Parties to the dispute after such dispute arises." *Id.* at 51 (Annex 2 ¶ 3). The GSPC made clear that "the award . . . shall be final and binding upon the Parties." *Id.* at 53 (Annex 2 ¶ 8(g)). The contract also set forth the Parties' arrangement for service, namely that any request or demand under the contract be dispatched by international courier to the address listed in the agreement. *Id.* at 39 (Art. 21). For NIOC that address was in Tehran, Iran. *Id.*

2

In 2003, Crescent Petroleum assigned its rights and obligations under the GSPC to its wholly owned subsidiary, CGC. ECF 1 ¶¶ 2, 11. To prepare for the delivery of gas they expected to receive from NIOC, Petitioners incurred over $300 million in upfront costs to establish the infrastructure necessary to process and resell the gas. *Id.* ¶ 12. Despite Petitioners' investments, NIOC never supplied any gas to Petitioners. *Id.* ¶ 14. After informal attempts to resolve NIOC's purported breach failed, Petitioners initiated arbitration proceedings on July 15, 2009, as required under the GSPC. *Id.* ¶ 15; ECF 1-5 ¶¶ 12, 13.

## B. The Arbitration Proceedings

As the contract required, the Parties agreed on the seat of arbitration, deciding that it would take place in London, England. ECF 1-5 ¶ 20; ECF 18-5 ¶ 4. The arbitration was then constituted in accordance with the procedures set forth in the GSPC. ECF 1 ¶ 22. The Arbitration Tribunal ordered bifurcation of the proceedings on the issues of liability (including jurisdictional questions) and damages. ECF 1-5 ¶ 14.

On July 31, 2014, the Tribunal issued its Liability Award for the first phase of the proceedings. ECF 1-5 ¶¶ 15, 23. The Tribunal confirmed its jurisdiction to hear the matter, found that the GSPC was valid and binding on the Parties, and concluded that NIOC breached the Parties' agreement. *Id.* ¶ 23. With liability decided in Petitioners' favor, the Tribunal proceeded to the remedies phase. *See id.* ¶ 39.

After resolving disputes about the composition of the Tribunal, which required it to be reconstituted, ECF 1-5 ¶¶ 118–211, the Tribunal finally issued its unanimous damages decision on September 27, 2021. In its Final Award, the Tribunal ordered NIOC to pay Petitioners $2,429,970,000 for their lost profits and gave NIOC three months to satisfy the judgment. ECF 1-5 ¶¶ 775–779, 887(A)–(B). The Final Award also required NIOC to pay Petitioners post-award

interest at the rate of 12 month EIBOR plus one percentage point,[2] compounding annually, and beginning three months from the date of the award. ECF 1-5 ¶ 887(C).

All told, the Arbitration took nearly thirteen years to resolve and was hard-fought by all participants. *See* ECF 1 ¶ 40. And as NIOC confirmed during the proceedings, it had "a full and complete opportunity to present its case" before the Tribunal. ECF 1-5 ¶ 113. NIOC lodged numerous challenges to the Tribunal's rulings in English courts, both during and after the proceedings. ECF 18-5 ¶¶ 7–8, 12–14; ECF 19-1. The bases for those challenges are not relevant to the Court's decision here, but suffice it to say that each of NIOC's various appeals have been rejected. ECF 18-5 ¶¶ 7–8, 12–14; ECF 19-1. NIOC did not pay Petitioners within three months as required under the Final Award. ECF 18-5 ¶ 10. The Liability and Final Awards have been recognized and confirmed many times over, including by the Rotterdam Court in the Netherlands and the Court in Sharjah in the UAE. ECF 18-3 ¶ 5. To date, Petitioners have only collected $807,694 of their award through these other enforcement proceedings. ECF 22-1.

C. **The Proceeding Before This Court**

On May 16, 2022, Petitioners filed a petition to confirm the arbitration award in this Court. *See* ECF 1. Petitioners made numerous attempts to serve NIOC through international courier to the address provided in the GSPC. ECF 12-1 ¶¶ 3–5. They tried three international courier services. *Id.* However, each service package was marked undelivered or returned to them. *Id.* After Petitioners' attempts to serve NIOC under the arrangement provided for in the GSPC were unsuccessful, the Court granted Petitioners' motion for alternative service and authorized them to serve NIOC's officials and legal counsel by email. ECF 13. On August 9, 2022, Petitioners emailed a copy of the summons, petition, and supporting documents required for service to NIOC's legal

---

[2] EIBOR stands for the Emirates Interbank Offered Rate and is the benchmark interest rate in the UAE. *EIBOR Rates*, Cent. Bank of the U.A.E., https://www.centralbank.ae/en/forex-eibor/eibor-rates/ (last visited April 29, 2024).

counsel and other NIOC officials, including its Director of Legal Affairs. ECF 15 ¶¶ 2–4. This method was successful; Petitioners received confirmation of email delivery, including an electronic read receipt from NIOC's legal counsel. *Id.* ¶ 4; ECF 15-2. Petitioners subsequently filed a declaration confirming service. ECF 15. NIOC had sixty days from the date of service to respond to the petition, 28 U.S.C. § 1608(d), but it never appeared. Accordingly, Petitioners filed an affidavit for default, ECF 16, which the Clerk of Court entered, ECF 17. Petitioners then filed their motion for default judgment and confirmation of the arbitration award that is the subject of this opinion.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter default judgment against an absent respondent when a petitioner applies for it. But "the entry of a default judgment is not automatic," *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005), particularly when the defaulting party is a foreign sovereign. Such cases are governed by the Foreign Sovereign Immunities Act (FSIA), which "affords the sole basis for obtaining jurisdiction over a foreign state." *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 13 (D.C. Cir. 2015); *see* 28 U.S.C. § 1604. Under the FSIA, foreign sovereigns, and their agencies and instrumentalities, are presumptively immune from suit unless certain statutory exceptions apply. *Mohammadi*, 782 F.3d at 13–14; 28 U.S.C §§ 1604, 1605. Accordingly, before entering a default judgment against a foreign state, the Court must satisfy itself that it has subject matter jurisdiction over the claims (in other words, that a statutory exception to immunity applies) and personal jurisdiction over the respondent. *See, e.g.*, *Sterling Merch. Fin. Ltd. v. Republic of Cabo Verde*, 261 F. Supp. 3d 48, 50 (D.D.C. 2017). The moving party bears the burden of establishing the court's jurisdiction. *See, e.g.*, *Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 190 (D.D.C. 2017).

Even after confirming its jurisdiction, a court cannot enter a default judgment against a foreign state unless the petitioner presents "a legally sufficient prima facie case, in other words, a legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff." *Kilburn v. Islamic Republic of Iran*, 699 F. Supp. 2d 136, 150 (D.D.C. 2010) (quoting *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008), *aff'd*, 646 F.3d 1 (D.C. Cir. 2011)). The FSIA gives the court discretion to decide what or how much evidence a petitioner must submit to establish its right to relief, "requiring only that it be satisfactory to the court." *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014). And the FSIA "does not require the court to demand more or different evidence than it would ordinarily receive." *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020). Thus, a petitioner may rely on its pleadings, supporting affidavits, and other documentary evidence. *See, e.g.*, *Mwani*, 417 F.3d at 7. Further, the court can accept "[u]ncontroverted factual allegations that are supported by admissible evidence . . . as true." *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 33 (D.D.C. 2016). Overall, the FSIA "give[s] an unresponsive sovereign some protection against an unfounded default judgment," but it does not "relieve[] the sovereign from the duty to defend cases." *Owens*, 864 F.3d at 785.

**III.    ANALYSIS**

The Court grants Petitioners' motion for default judgment and confirms the arbitration award for the following reasons, discussed in greater detail below. First, the Court has subject matter jurisdiction because this case falls under the FSIA's arbitration exception to sovereign immunity. Second, the Court has personal jurisdiction over NIOC, which the Court finds Petitioners served consistent with the FSIA's requirements. Finally, the Court concludes that

Petitioners are entitled to the relief that they seek because they have satisfied all procedural requirements for confirmation of their award and there are no grounds for the Court to refuse enforcement.

### A. The Court Has Subject Matter Jurisdiction

The FSIA grants immunity to foreign states, and their agencies and instrumentalities, from suit in the United States, unless some exception to immunity applies. *See, e.g.*, *Holladay v. Islamic Republic of Iran*, 523 F. Supp. 3d 100, 104 (D.D.C. 2021). "NIOC is an agency or instrumentality of Iran," *id.* at 111, and is thus presumptively immune. Petitioners contend that this case falls within the FSIA's arbitration exception, 26 U.S.C. § 1605(a)(6), and that NIOC implicitly waived its immunity in any event, *see id.* § 1605(a)(1). The Court agrees that it has subject matter jurisdiction under the arbitration exception. Therefore, NIOC is not immune from suit in the United States, and the Court does not have to decide whether it also waived its sovereign immunity.

The FSIA's arbitration exception provides that "[a] foreign state shall not be immune from the jurisdiction of the Courts of the United States" in any action to "confirm an [arbitration] award" made pursuant to an agreement "by the foreign state with or for the benefit of a private party" when the award is "governed by a treaty . . . calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). Thus, the arbitration exception applies if Petitioners demonstrate that all jurisdictional facts required by the statute have been met; that is "the existence of an arbitration agreement, an arbitration award and a treaty governing the award." *LLC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021).

Petitioners have established those facts here. They have produced certified copies of the agreement and award, *see* ECF 1-5; ECF 1-6, and they seek to enforce that award under the New York Convention, which is "exactly the sort of treaty Congress intended to include in the

arbitration exception." *TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 300 (D.C. Cir. 2005) (quoting *Creighton Ltd. v. Government of the State of Qatar*, 181 F.3d 118, 123–24 (D.C. Cir. 1999)). And the Court agrees that the Final Award falls under the New York Convention.

Congress codified the New York Convention in the Federal Arbitration Act (FAA), which provides that any "action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States" and the "district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. Under the FAA, an "arbitration agreement arising out a legal relationship, whether contractual or not, which is considered commercial . . . falls under the [New York] Convention," except if the relationship is between U.S. citizens or otherwise lacks any "reasonable relation with one or more foreign states." 9 U.S.C. § 202. Accordingly, courts have found that awards fall under the New York Convention (and thus can be enforced under the FAA) where "(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *Africard Co. Ltd. v. Republic of Niger*, 210 F. Supp. 3d 119, 123 (D.D.C. 2016) (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001)); *see also Nanko Shipping, Guinea v. Alcoa, Inc.*, 330 F. Supp. 3d 439, 445 (D.D.C. 2018) (quoting same).

Petitioners' claim satisfies these requirements. First, the GSPC is a written contract. *See generally* ECF 1-6. Second, under the GSPC, the Parties agreed to arbitrate this dispute in the United Kingdom, which is a signatory of the New York Convention.[3] *See* ECF 1-6 at 40 (Art. 22.2); ECF 1-6 at 51–53 (Annex 2); ECF 1-5 ¶ 20. Third, the GSPC is a contract to supply, process,

---

[3] *Contracting States*, New York Arbitration Convention, http://www.newyorkconvention.org/countries.

and sell natural gas, which means that it clearly "arise[s] out of or in connection with commerce" and is thus commercial in nature. *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 103–05 (D.C. Cir. 2015). Finally, the GSPC is not domestic in its scope. The Parties are foreign entities, and the product at issue was intended "for resale and consumption in the UAE market." ECF 1-5 ¶ 529(1). As a result, the Court has subject matter jurisdiction over this case under the FSIA's arbitration exception.

### B. The Court Has Personal Jurisdiction Over NIOC

The Court also finds that it has personal jurisdiction over NIOC. The FSIA provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief under which the district courts have [subject matter] jurisdiction" under 28 U.S.C. §1330(a) "where service has been made under [28 U.S.C. § 1608]." 28 U.S.C. § 1330(b). In other words, "under the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002). Pursuant to the Court's order authorizing service by alternate means, ECF 13, Petitioners served NIOC by emailing the required documents to NIOC's legal counsel and other NIOC officials, including its Director of Legal Affairs, ECF 15 ¶¶ 2–4. The Court finds that this service satisfies the FSIA's requirements.

The FSIA establishes three methods by which a party may serve an agency or instrumentality of a foreign state:

1. by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

2. if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment

    or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

3. if service cannot be made within 30 days under paragraph (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state— (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b)(1)–(3). These methods are listed in order of preference; that is a "plaintiff must attempt service by the first method (or determine it is unavailable) before proceeding to the second method, and so on." *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012).

    Here, Petitioners could not effect service under the first two methods. They tried to avail themselves of the first method, under § 1608(b)(1), because the Parties had a special arrangement for service. *See* ECF 12 at 6. In the GSPC, the Parties agreed that service of written notices or demands related to the contract would be accomplished through delivery by international courier to the address specified in the contract. ECF 1-6 at 39 (Art. 21); *see also* ECF 18-1 at 18. Petitioners made many attempts to serve NIOC at its address in Tehran, Iran, using three international courier services. ECF 12-1 ¶¶ 3–5. Despite using the address listed in the contract, *see id.*, each service packet was returned to Petitioners or was otherwise undeliverable, *see* ECF 12-2; ECF 12-3; ECF 12-4. Petitioners tried, but have not been able, to find another international courier service that can

make a physical delivery to Iran. *See* ECF 12-1 ¶ 5. So, Petitioners satisfied their obligation to attempt service under the first method but were unsuccessful despite their diligent efforts.

The second method of service under § 1608(b)(2) was not available to Petitioners. Iran is not a party to the Hague Service Convention and there is no other applicable international convention for service to Iran. *See* ECF 18-1 at 18. Additionally, the Court is not aware of any officers or agents authorized to receive service on NIOC's behalf in the United States.

However, Petitioners successfully accomplished service under the third method. As cited above, § 1608(b)(3)(C) allows a party to effect service by delivering "a copy of the summons and complaint, together with a translation of each into the official language of the foreign state . . . as directed by order of the court consistent with the law of the place where service is to be made," so long as the method of service is "reasonably calculated to give actual notice." Petitioners satisfied these requirements. They moved the Court to serve NIOC's legal counsel and certain officials by email after exhausting their efforts to serve NIOC under their agreement. *See* ECF 12. The Court granted that motion. ECF 13. Petitioners then served NIOC, by email, as directed by the Court's order. ECF 15 ¶¶ 1–4. Petitioners have submitted sworn declarations confirming that they sent NIOC's counsel, and several NIOC officials, the petition, summons, and other supporting documents that the statute requires for service. *Id.* They also represent that they received confirmation of delivery, including electronic read receipts confirming that NIOC's counsel opened and read the service email, *see id.* ¶ 4; ECF 15-1; ECF 15-2, and that service by email is consistent with Iranian law, ECF 12-1 ¶ 10; ECF 12-9. The Court finds that service in this manner is "reasonably calculated" to provide actual notice, particularly given Petitioners' sworn evidence that they received a read receipt of the service email. Indeed, courts have permitted email service of foreign instrumentalities under similar circumstances. *See, e.g.,*

11

*UAB Skyroad Leasing v. OJSC Tajik Air*, 1:20-cv-00763-APM, ECF 8 (D.D.C. Mar. 23, 2020). Accordingly, service was proper, and the Court has personal jurisdiction over NIOC.

### C. Petitioners Are Entitled to Confirmation of Their Arbitration Award

Satisfied that it has jurisdiction to proceed, the Court turns to the merits of the petition and grants it. The FAA "affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012). If the Court finds that Petitioners have satisfied the FAA's procedural requirements, it "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention. 9 U.S.C. § 207; *see also Belize Soc. Dev. Ltd*, 668 F.3d at 727.

First, the Court finds that Petitioners have satisfied the statute's procedural requirements for enforcement. Under the New York Convention, a party seeking enforcement must supply "[t]he duly authenticated original award or a duly certified copy thereof" and "[t]he original agreement [in which the parties agreed to arbitration] . . . or a duly certified copy thereof." N.Y. Convention art. IV(1). Petitioners have done that. *See* ECF 1-5; ECF 1-6. They also timely filed this enforcement action within three years of the date of the award. 9 U.S.C. § 207; *see also* ECF 1 (petition filed May 16, 2022); ECF 1-5 (Final Award issued September 27, 2021).

Second, there is no ground for the Court to deny Petitioners the relief they seek. Under the New York Convention, there are seven such grounds upon which a court may refuse to recognize an arbitration award, but only two are relevant here.[4] Specifically, the Court can refuse to confirm an arbitration award where:

---

[4] For the other grounds set forth in the Convention, the opposing party "bears the heavy burden of establishing that one of th[ose] grounds for denying confirmation . . . applies." *Sterling Merch. Fin. Ltd.*, 261 F. Supp. 3d at 53. Because NIOC has not appeared in this action, it cannot meet that burden. *See, e.g.*, *Africard Co. Ltd.*, 210 F. Supp. 3d at 127;

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where enforcement is sought]; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention art. V(2). Neither are applicable here. The underlying dispute in this case "is an alleged breach of contract, which is surely capable of settlement by arbitration in the United States." *Sterling Merch. Fin. Ltd.*, 261 F. Supp. 3d at 53. And there is nothing in the record that remotely suggests that confirming Petitioners' award would be contrary to the public policy of the United States, that is that it would offend this country's "most basic notions of morality and justice." *Newco Ltd. v. Gov't of Belize*, 650 F. App'x 14, 16 (D.C. Cir. 2016). To the contrary, enforcing the Final Award to remedy the substantial harm NIOC caused Petitioners as a result of its breach is consistent with the United States' "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also Newco Ltd.*, 650 F. App'x at 16.

## IV. Conclusion

The Court **GRANTS** Petitioners' motion for default judgment, ECF 18, and its petition to confirm arbitration award, ECF 1.

The Final Award ordered NIOC to pay Petitioners $2,429,970,000, as well as post-award interest "at the rate of 12 month EIBOR + 1 percentage point, compounding annually, commencing from three (3) months from [September 27, 2021] until date of payment." ECF 1-5 ¶ 887. As of April 30, 2024, Petitioners have recovered the U.S. dollar equivalent of $807,694 in partial satisfaction of the Final Award through worldwide enforcement proceedings. ECF 22-1. After

---

*Sterling Merch. Fin. Ltd.*, 261 F. Supp. 3d at 53. Accordingly, the Court does not need to address the other potential grounds for refusing to enforce an arbitration award other than those addressed in the text.

accounting for the amounts received, the remaining unpaid portion of the Final Award is $2,429,162,306, and the interest accrued on the remaining principal through the date of this judgment, April 30, 2024, is $326,961,382. *Id.* The total remaining amount due under the Final Award is therefore $2,756,123,688.

Accordingly, the Court enters judgment for Petitioners in the amount of $2,756,123,688.

An order will issue separately.

**SO ORDERED.**

                                                                                                                      _____

                                                                                                                      JIA M. COBB
                                                                                                                      United States District Judge

Date: April 30, 2024